DANBURY NATIONAL BANK, TRUSTEE (ESTATE OF LEON U. GRIDLEY) *v.* WINIFRED V. GRIDLEY ET AL.

SUPERIOR COURT          LITCHFIELD COUNTY          FILE No. 14385

Memorandum filed July 23, 1957.

*Harry B. Bradbury,* of New Milford, for the plaintiff.

*Robert K. Watson,* of Danbury, *Hubbard & Cramer,* of Litchfield, *Henry B. Anderson,* of New Milford, and *Donald T. Warner,* of Sharon, for the defendants.

TROLAND, J. This is an action for the construction of the will of Leon U. Gridley, a resident of New

Milford, Connecticut, who died on January 3, 1952. The plaintiff is executor of said will and trustee under the trusts created therein. Leon U. Gridley was survived by his widow, Winifred V. Gridley, and three daughters, Anna G. Concannon, Mildred G. Turjanica, and Caroline G. Couch. There were no other children, issue of his marriage. Leon U. Gridley also left a sister, Caroline Louise Gridley.

Article two of the will provides: "I give and bequeath to my sister, Caroline Louise Gridley, of Pawtucket, Rhode Island, the use of my share of the home in which she lives, located in Pawtucket, R.I., of which we are co-owners, for life, and at her death I direct that the same be included and disposed of as a part of the residue of my estate." Caroline Louise Gridley is now living, and is seventy-two years of age.

Article three of the will provides: "I give and bequeath to my wife, Winifred V. Gridley, of the town of New Milford, County of Litchfield, State of Connecticut, all of my real estate located in New Milford, Connecticut, for life, and at her death I direct that the same be included and disposed of as a part of the residue of my estate." Winifred V. Gridley is now living and is seventy-five years of age.

The residuary clause of the will, Article five, reads as follows: "All the rest, residue and remainder of my property, both real and personal and mixed, of whatsoever nature and wheresoever found, I give, devise and bequeath to the Danbury National Bank of Danbury, Connecticut, in trust nevertheless for the following purposes: To invest and re-invest said property and to collect the rents, profits, issue and income thereof and to pay over the same to the following parties in the following manner:

"1.  I direct that my said Trustee shall pay over to my wife, Winifred V. Gridley of New Milford, Connecticut, a sum equal to thirty (30) percent of the rents, profits, issue and income of said trust, for life.

"2.  I direct that my said Trustee shall pay over to my sister, Caroline Louise Gridley of Pawtucket, R.I. a sum equal to twenty (20) percent of the rents, profits, issue and income of said trust, for life.

"3.  I direct that my said Trustee, shall pay over to my daughters, me surviving, or to the issue of their marriage in the event they predecease me, the balance of said rents, profit, issue and income, equally, share and share alike.

"4.  At the termination of said life estates, or any of them, I direct my said Trustee to convert that portion of my estate thus freed from its life user, to cash, and to distribute the same equally between my daughters me surviving, or to the issue of their marriage should they not be living at the time, which issue shall take equally the share of the mother, and at the termination of the last life estate, to convert all the remaining assets of said estate to cash, and to divide the same equally among my daughters, or their issue, share and share alike, absolute and forever."

The daughter, Anna G. Concannon, died March 9, 1954, leaving no issue.  The defendant Joseph G. Concannon, her husband, is the duly appointed and qualified administrator of her estate.  The daughter Mildred G. Turjanica, died October 14, 1956, leaving a daughter Dolores Leverich.  The daughter Caroline G. Couch, is living, and at present has no issue.

A life estate in certain real estate is created in the testator's sister in article two, and in certain other real estate in the testator's wife in article three.  In each case it is provided that upon the death of the

life tenant the real estate shall "be included and disposed of as a part of the residue of my estate." It therefore appears that in reality this suit is confined to the construction of article five, consisting of four numbered paragraphs. This article establishes the trust. Under paragraph 1, the wife receives 30 per cent of the income for life, and the sister, under paragraph 2, receives 20 per cent of the income for life. The "balance" of the trust income was payable to the three daughters who survived the testator, in equal shares, each daughter receiving one-third of such "balance" or 16 2/3 per cent of the total trust income.

The death of Mrs. Concannon on March 9, 1954, precipitated the institution of this action, as it created a problem for the plaintiff with reference to the disposition of income previously accruing and payable to her. The death of Mildred G. Turjanica, while this action has been pending, raises the same problem.

Six questions have been submitted to the court: The first question is: "Did Anna G. Concannon, by virtue of Paragraph 3, Article Five, of said will, she having survived the testator, and leaving no issue, obtain a vested interest in the income and principal of 16-2/3 percent of the residuary estate at the death of the testator, which would upon her death, without issue, become distributable to her estate and heirs?" This is a double question. She did receive a vested interest but as she did not survive to the appointed time, the vested estate was defeated. The answer of the court to the ultimate question is No. *White* v. *Smith*, 87 Conn. 663. The right of any beneficiary dying before the termination of the trust, to receive income, terminates at his or her death, and there is nothing which could pass to his or her estate. *Union & New Haven Trust Co.* v. *Sellek*, 128 Conn. 566, 576.

The second question is: "Did Anna G. Concannon, by surviving the testator, obtain a vested interest in the real estate devised under Articles Two and Three of said will, subject only to the life uses therein provided, or does the title vest in the distributees to be ascertained as of the dates of death of the respective life tenants?" The answer of the court is that the estate vests in point of interest or right, at the death of the testator, in all the then existing beneficiaries, subject to being divested as one or more of them may die, in favor of those who survive the life tenant. *White* v. *Smith*, 87 Conn. 663.

The third question is: "Should the language of paragraph 4, Article Five, reading 'said life estates or any of them' be construed to read 'said life estates or either of them,' referring only to said Caroline Louise Gridley and Winifred V. Gridley, or does it also include the daughters as life tenants under Paragraph 3?" The answer of the court is, paragraph 4 of article five refers only to the life uses of the widow and sister of the testator, namely, Winifred V. Gridley and Caroline Louise Gridley, in its two references to life estates.

The fourth question is: "Should the language in Paragraph 4, reading 'between my daughters me surviving, or to the issue of their marriage should they not be living at the time,' be construed to read 'among my daughters, me surviving,'" etc.? This question is unnecessary. The clause refers to those of his daughters, or the issue of daughters not living at the termination of the same two life estates.

The fifth question is: "Should the language of said Paragraph 4 reading 'between my daughters me surviving' be construed to read between my daughters them or her surviving,' thereby determining the time of vesting in the qualifying distributees as that of the respective life tenant?" The answer to this question is Yes.

The sixth question is: "Should the language 'to distribute the same equally between my daughters me surviving, or to the issue of their marriage should they not be living at the time,' be construed to read, 'to distribute the same equally to their issue should they not be living at the time, and if there is no issue to the survivors of them, to the heirs of the survivor of them?'" The answer to this question is Yes.

In answering all of the above questions, the court has been mindful of the rule laid down in *White* v. *Smith*, 87 Conn. 663, 668, wherein it is stated: "The controlling fact in the interpretation of testaments is the expressed intent as disclosed by the testator's language. This language will be read in its entirety, and with the purpose of gathering from its general scheme, scope and character, and the nature of its provisions, what the intention was. In this search for intent, purely artificial and arbitrary rules of mere literary construction can properly play but a small part, and, if followed, might easily result in an undeserved importance being attached to a purely accidental choice of words."

The estate of Anna G. Concannon is entitled to the accrued but unpaid share of the trust income belonging to her to the date of her death. The estate of Mildred G. Turjanica is entitled to her accrued but unpaid share of the trust income, to the date of her death. In the period from the date of death of Anna G. Concannon to the date of death of Mildred G. Turjanica, this share would be one fourth of the trust income. The income of the "balance" of the trust fund referred to in paragraph 3 of article five, since the date of death of Mildred G. Turjanica, has been and now is properly payable to Caroline G. Couch and to Dolores Leverich, the daughter of Mildred G. Turjanica, in equal shares.

Time may bring other questions. They are now moot. If at the death of the last of the two life tenants, there remain no surviving daughters, and no surviving issue, in this remote event further advice from the court may be necessary.

Fees and expenses to the parties are allowed in the sum of $............ each, which fees may be fixed in a supplemental order after conference with the court.

Judgment may enter in accordance with this memorandum, and without costs to any party.